UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLAH GREATMIND
ALLAH, *d/b/a* Greatmind
Enterprise,

           Plaintiff,

v.

GENISYS CREDIT UNION,
NATHAN DAVIDSON, and
BRIAN DOWGIALLO,

           Defendants.

Case No. 2:25-cv-11403
District Judge Susan K. DeClercq
Magistrate Judge Anthony P. Patti

_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) (ECF No.
16)**

**I.     RECOMMENDATION**:  The Court should **GRANT** Defendants' motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 16).

**II.     REPORT:**

    **A.     Introduction**

Plaintiff Allah Greatmind Allah filed the instant lawsuit *in pro per* on May

14, 2025 (ECF No. 1), citing, *inter alia*, 15 U.S.C. § 1601, *et seq*. of the Truth in

Lending Act (TILA), 15 U.S.C. §§ 1692d, 1692g of the Fair Debt Collection

Practices Act (FDCPA), 16 C.F.R. §§ 433.2, 444.2 of the Federal Trade

Commission (FTC) regulations, 12 U.S.C. § 1786(e)(l)(A) of the Federal Credit

1

Union Act (FCUA), and Article 9 of the Uniform Commercial Code (UCC). (ECF No. 1, PageID.4, 5, 7, 8.) Defendants are Genisys Credit Union (GCU), Nathan Davidson, who is described as the Chief Financial Officer (CFO), and Brian Dowgiallo, who is described as a Risk Management Vice President. (*Id*., PageID.2-3.)

**B. Service**

At the time he filed this lawsuit in May 2025, Plaintiff also sought to proceed without prepayment of fees or costs. (ECF No. 2.) The Court directed Plaintiff to correct deficiencies in his application to proceed *in forma pauperis* (ECF No. 6), he filed an affidavit in support of his amended application to proceed without prepaying fees or costs (ECF No. 7), and, on August 7, 2025, the Court entered orders granting Plaintiff's application (ECF No. 8) and directing Plaintiff to complete service documents and for service of process by the U.S. Marshal Service (USMS) (ECF No. 9).

Defendants appeared via counsel on August 14, 2025. (ECF Nos. 11, 12.) For whatever reason, the efforts at service continued.[1]

---

[1] The Clerk received service documents on August 22, 2025 and issued summonses on August 29, 2025 (ECF No. 15), the USMS attempted service by mail on September 19, 2025 (ECF No. 21), and it appears the USMS's attempts at service upon the three Defendants were each received on September 24, 2025. (ECF No. 23.) *See* https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589%20200710%205270%203190%20275%2002; /

## C.     Discovery

Defendants filed a Fed. R. Civ. P. 26(f) discovery plan on September 9, 2025 (ECF No. 18), and Plaintiff filed an "independent" Rule 26(f) discovery plan on September 16, 2025 (ECF No. 20).  On September 16, 2025, the Court conducted an in person scheduling conference, at which Plaintiff and Attorney Michael V. Krempa appeared (ECF No. 13) and entered an initial scheduling order and order staying discovery "until the pending motion to dismiss has been fully decided[,]" (ECF No. 19).

## D.     Pending Motion

Judge DeClercq has referred this case to me for all pretrial proceedings. (ECF No. 10.)  Currently pending before the Court is Defendants' September 3, 2025 motion to dismiss (ECF No. 16), as to which Plaintiff's response was due on September 29, 2025 (ECF No. 17).  Plaintiff filed a timely response on September 29, 2025 (ECF No. 22), and Defendants filed a reply on October 13, 2025 (ECF No. 24).

This motion is now ready for decision.

---

https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589%200710%205270%203190%200274%2096 /
https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=9589%200710%205270%203190%200275%2019.

**E.      Fed. R. Civ. P. 12(b)(6)**

Defendants seek dismissal based on Fed. R. Civ. P. 12(b)(6).  (ECF No. 16, PageID.163.)  When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'"  *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

### F.     Discussion

#### 1.     Factual allegations

Plaintiff's May 14, 2025 complaint concerns "accounts held by Defendant, [GCU]."  (ECF No. 1, PageID.5 ¶ 2.)  Plaintiff alleges, *inter alia*, that "[t]he alleged debt is a credit balance and financed interest connected to [his] secured instruments . . . ."  (*Id*., PageID.5 ¶ 7.)  (*See also* ECF No. 1, PageID.5-7.)

On May 27, 2025 – *i.e.*, one week after he initiated this lawsuit – Plaintiff filed a "verified affidavit of claimant," (ECF No. 5, PageID.14-16), a "notice of filing supplemental pleadings in support of verified complaint," (*id*., PageID.17-20);

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

a "verified affidavit of damages," (*id.*, PageID.21-23), and 114 pages of exhibits (*id.*, PageID.24-137).[3]  The exhibits greatly enhance the Court's understanding of the basis of this lawsuit, because they suggest that:

- Plaintiff became a member of GCU on or about March 22, 2021 (*id.*, PageID.28, 30, 31);

- In April 2021, Plaintiff applied for a New Credit Card Account (*id.*, PageID.96);

- In 2021, he was approved for a GCU Platinum MasterCard (*id.*, PageID.55-59);

- On April 16, 2021, Plaintiff financed $17,808.55 with GCU, the collateral for which was a 2017 Honda (*id.*, PageID.65-68);

- In March 2022, Plaintiff requested an increase in his credit limit from $2,500 to $3,500 (*id.*, PageID.97), which GCU approved (*id.*, PageID.94);

- Plaintiff stopped making payments on his credit card and auto loan in August of 2023 (*id.*, PageID.94);

---

[3] Neither Plaintiff's initial pleading (ECF No. 1) nor his May 27, 2025 filing (ECF No. 5) complies with E.D. Mich. LR 5.1's requirements of double-spacing and 14-point font.  Plaintiff is hereby cautioned that future non-compliant filings will be at risk of being stricken.  That said, Plaintiff's May 27, 2025 filing (ECF No. 5) describes the exhibits as follows:  (1) membership service agreement & certificate of acknowledgment (*id.*, PageID.24-50); (2) accepted credit card perfected agreement (*id.*, PageID.51-59); (3) retail installment sales contract with endorsement (*id.*, PageID.60-69); (4) UCC financing statement and control agreement (*id.*, PageID.70-82); (5) sworn affidavit of billing error, notices, and security interest instruments (*id.*, PageID.83-92); (6) GCU's October 28, 2024 response to Plaintiff's complaint and demand (*id.*, PageID.93-111); (7) a July 11-23, 2024 rescission of security interest, entitlement order & affidavit of ownership (*id.*, PageID.112-125); (8) a September 22, 2024 formal notice of dispute and assertion of rights (*id.*, PageID.126-134); and, (9) a September 22, 2024 full accounting request (*id.*, PageID.135-137).

- Plaintiff alleges that GCU's "wrongful conduct . . . began in October 2023 and is ongoing[,]" (ECF No. 1, PageID.7; *see also id*., PageID.5 ¶ 5, PageID.6);

- Plaintiff wrote to Nathan Davidson, GCU's CFO, on three occasions in November 2023 regarding his "principal account" ending in #264 (ECF No. 5, PageID.89-91);

- At some point, Plaintiff's balance on one of his accounts was $4,539.10 (*id*., PageID.92);

- On February 13, 2024, GCU received two checks drawn on Plaintiff's account at Citizens Bank – one for $4,685.97, which was applied to his credit card balance and the other for $12,053.80, which was deposited to his savings account; however, the checks were returned unpaid on February 20, 2024, the payment was backed off the credit card, at which point the owing balance was $4,974.49, which was charged off on June 26, 2024 (*id*., PageID.94, 98-101, 110-111);

- Plaintiff alleges that, "on or about February 10, 2024, Defendant and/or its agents" seized his motor vehicle (*id*., PageID.7);

- On May 3, 2024, GCU received a $10,860.84 check, *i.e.*, the proceeds of the vehicle sale, and, once applied to the auto loan, the owing balance was $1,434.61, which was charged off on June 26, 2024 (ECF No. 5, PageID.95, 102-103, 109);

- On June 26, 2024, Plaintiff's primary shares account and opportunity checking account were closed (*id*., PageID.104-108);

- Plaintiff wrote to Davidson on multiple occasions in July 2024 regarding Account Nos. ending in #264 (*i.e.*, his Member Number), #897 (*i.e.*, his Checking Account ID), #264L61 (*i.e.*, his credit card account) and/or seemingly also #264L2 (*i.e.*, his auto loan) (*id*., PageID.26-27, 121-125; *see also id*., PageID.28,

30-31, 65, 104, 106-107, 109-111, 113-120), which Plaintiff describes as "rescission of security interest, entitlement order & affidavit of ownership" (*id.*, PageID.112; *see also id.*, PageID.15, 20);

- Plaintiff wrote to Davidson on one or more occasions in September 2024 regarding his accounts (*id.*, PageID.52-54, 61-64, 84-88, 127-134, 136-137);

- In December 2024, Plaintiff registered Greatmind Enterprise as a business in Wayne County (*id.*, PageID.33);

- In February 2025, Plaintiff filed a State of Michigan UCC Financing Statement, listing himself and Greatmind Enterprise as debtors, listing himself as a security party, and describing the collateral as, *inter alia*, a 2019 lease (*id.*, PageID.81-82); and,

- By a letter dated October 28, 2024, Brian Dowgiallo, Esq. of GCU wrote to Michigan's Department of Insurance and Financial Services, in response to Plaintiff's October 16, 2024 complaint, explaining the history from March 2021 to June 26, 2024 (*id.*, PageID.94-95).

Plaintiff initiated this lawsuit on May 14, 2025.

### 2.   Federal law

#### a.   TILA (15 U.S.C. §§ 1601-1667f)

The TILA consists of five parts:  (i) general provisions (15 U.S.C. §§ 1601-1616); (ii) credit transactions (*id.*, §§ 1631-1651); (iii) credit advertising and limits on credit card fees (*id.*, §§ 1661-1665e); (iv) credit billing (*id.*, §§ 1666-1666j); and, (v) consumer leases (*id.*, §§ 1667-1667f).  Plaintiff's complaint refers generally to the TILA, 15 U.S.C. § 1601, *et seq*. (*See* ECF No. 1, PageID.4, 8.)  Perhaps this is why Defendants' motion does not address the TILA.  (*See* ECF No. 16.)

Nonetheless, because Plaintiff's pleading does not specify under which of the TILA's many sections he brings his claim, the Court is left to wonder about the basis of such a claim.  To be sure, the source of Plaintiff's TILA claim is seemingly brought into focus by Plaintiff's response, which references:  (i) Section 1666 ("Correction of Billing Errors") of the Fair Credit Billing Act (FCBA) (*see* 15 U.S.C. §§ 1666-1666j); as well as, (ii) 12 C.F.R. §§ 1026.12 ("Special credit card provisions.") and Section 1026.13 ("Billing error resolution.") of Truth in Lending (Regulation Z) (*see* 12 C.F.R. § 1026.1 to § SUPPLEMENT I (Part 5)).  (ECF No. 22, PageID.197-198, 201-202, 204-206, 208.)

"[T]he FCBA aims to 'protect the consumer against inaccurate and unfair credit billing and credit card practices[.]'" *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 433 (3d Cir. 2018) (quoting 15 U.S.C. § 1601(a)).  It "imposes on creditors 'requirements ... for the correction of billing errors.'" *Krieger*, 890 F.3d at 433 (quoting *Am. Express Co. v. Koerner*, 452 U.S. 233, 234 (1981)).  "To trigger a creditor's obligation either to credit a disputed charge or to conduct a reasonable investigation into the matter, a consumer must submit a written notice of billing error within 60 days after receiving the statement that contains the error." *Krieger*, 890 F.3d at 437 (citing 15 U.S.C. § 1666(a)); *see also Dawkins v. Sears Roebuck & Co.*, 109 F.3d 241, 243 (5th Cir. 1997) (same).

If Plaintiff intended his TILA claim to be based on 15 U.S.C. 1666, it is not enough for his May 27, 2025 supplement to reference a billing error affidavit(s) (*see* ECF No. 5, PageID.15, 17, 19, 20, 23), or to reference billing error notices (*id.*, PageID.22), or to attach an exhibit labeled "Sworn Affidavit of Billing Error, Notices, and Security Interest Instruments" (*id.*, PageID.83-92).  Nor is it enough for his September 29, 2025 response to reference "notices of billing error" (ECF No. 22, PageID.197) or "affidavit of billing error" (*id.*, PageID.198, 202, 204, 206, 207) or "billing error" (*id.*, PageID.203).  At best, in a portion of his response labeled, "Count II – Violation of the Truth in Lending Act (TILA) and Fair Credit Billing Act (FCBA)," Plaintiff contends:

- Plaintiff submitted a sworn Affidavit of Billing Error under 12 C.F.R. § 1026.13 and 15 U.S.C. § 1666, which required the Defendant to:

  o   Acknowledge the notice within 30 days,

  o   Conduct a reasonable investigation,

  o   Correct or respond to the disputed charges within 90 days.

- Defendant failed to acknowledge or respond, violating federal consumer credit law.

- Plaintiff also submitted lawful notices of rescission and demand for accounting.

- The Defendant's continued billing, reporting, and collection efforts without first resolving the dispute violates the FCBA and supports Plaintiff's federal claims.

10

(ECF No. 22, PageID.202-203 ¶¶ 5-8.)  However, even if Plaintiff is referring to the September 24, 2024 "Affidavit of Consumer Dispute and Demand for Billing Error Resolution Pursuant to 12 CFR § 1026.13," attached to his supplement (*see* ECF No. 5, PageID.84-88), it is not clear that he submitted this document "within sixty days" of GCU's allegedly erroneous account statement; in fact, this exhibit includes a copy of what appears to be a payment stub for a GCU account with a "new balance" of $4,539.10 but with the "statement period" and "payment due date" crossed out (*see id.*, PageID.92), although this appears to be the balance on the account ending in #264L61 (*i.e.*, his credit card account) in October 2023 (*see id.*, PageID.110).  *See* 15 U.S.C. 1666(a); *Krieger*, 890 F.3d at 437.  The Court will not read further into Plaintiff's 5-page attachment – which contains references to other sections of the FCBA – *e.g.*, Sections 1666(b)(2), Section 1666(e), or Section 1666d (*see id.*, PageID.86-87) – to discern the basis for his TILA/FCBA claim.

In the end, it is not the Court's role to guess at what a plaintiff's true claim may be. *See Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record.") (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).  Nor should defendants be left guessing.  *See Bell Atl. Corp.*, 550 U.S. at 555 (the goal of the complaint is "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]") (internal quotations and external citation omitted).

Accordingly, Plaintiff's claims against Defendants based on the TILA/FCBA should be dismissed for "failure to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### b.      FDCPA (15 U.S.C. §§ 1692-1692p)

Plaintiff's FDCPA claims appear to be based on 15 U.S.C. §§ 1692d ("Harassment or abuse"), 1692g ("Validation of debts").  (ECF No. 1, PageID.5 ¶ 6; *id*., PageID.7.)  However, in this matter, GCU is not a "debt collector" with respect to either the credit card account or the auto loan.  Section 1692a(6), which defines the term "debt collector," explains that this term does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person  . . . [or] . . . concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor."  15 U.S.C. § 1692a(6)(F)(ii),(iv).  Plaintiff's credit card account and auto loan at issue in this lawsuit each originated between GCU and Plaintiff.  "A bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'"  *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (quoting *Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 794 (W.D.Ky.2003)) (citations omitted)).

Instead, GCU is a "creditor," which the statute defines as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Plaintiff's credit card account and auto loan at issue in this lawsuit are debts owed to GCU. "Unlike debt collectors, the FDCPA does not protect consumers against their creditors—the entities who extend credit or 'to whom a debt is owed.'" *Meddaugh v. Gateway Fin. Servs.*, 616 F. Supp. 3d 703, 708 (E.D. Mich. 2022) (Ludington, J.). Indeed, Plaintiff's pleading alleges that "Defendant has wrongfully acted as a lien creditor . . . ." (ECF No. 1, PageID.5.)

That GCU is not a "debt collector" in this matter is fatal to Plaintiff's FDCPA claim to the extent it is based on 15 U.S.C. § 1692d, which provides that "[a] *debt collector* may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Id*. (emphasis added). The same is true to the extent Plaintiff's FCRA cause of action is based upon 15 U.S.C. § 1692g, assuming Plaintiff intended to rely upon either of the first two subsections. *See* 15 U.S.C. § 1692g(a) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a *debt collector* shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written

notice containing [certain information].") (emphasis added); 15 U.S.C. § 1692g(b)

("If the consumer notifies the debt collector in writing within the thirty-day period

described in subsection (a) that the debt, or any portion thereof, is disputed, or that

the consumer requests the name and address of the original creditor, the *debt*

*collector* shall cease collection of the debt, or any disputed portion thereof, until the

debt collector obtains verification of the debt or a copy of a judgment, or the name

and address of the original creditor, and a copy of such verification or judgment, or

name and address of the original creditor, is mailed to the consumer by the debt

collector.") (emphasis added).

Accordingly, Plaintiff's claims against GCU (or, for that matter, against

Davidson or Dowgiallo acting on GCU's behalf) based on 15 U.S.C. §§ 1692d,

1692g should be dismissed for "failure to state a claim upon which relief can be

granted[.]"  Fed. R. Civ. P. 12(b)(6).

### c.    FTC Trade Regulation Rules (16 C.F.R. §§ 401.1-465.9)

The Federal Trade Commission Act (FTCA) is codified at 15 U.S.C. §§ 41-

58.  "The FTC Holder Rule was adopted pursuant to § 5 of the Federal Trade

Commission Act ("FTCA"), 15 U.S.C. § 45, which outlaws unfair and deceptive

acts and practices in or affecting commerce."  *Morales v. Walker Motors Sales, Inc.*,

162 F. Supp. 2d 786, 790 (S.D. Ohio 2000).

To the extent Plaintiff bases his claims against Defendants on 16 C.F.R. § 433.2 ("Preservation of consumers' claims and defenses, unfair or deceptive acts or practices."), "[c]ourts have uniformly held that a private right of action does not exist under § 5 of the FTCA." *Morales v. Walker Motors Sales, Inc.*, 162 F. Supp. 2d 786, 790 (S.D. Ohio 2000). *See also Trego v. Germain Ford of Columbus*, No. 2:07-CV-1308, 2009 WL 2913962, at *3 n.2 (S.D. Ohio Sept. 8, 2009) ("16 C.F.R. § 433.2(a) does not confer a private right of action.") (citing *Morales*); *Abel v. KeyBank USA, N.A.*, No. 1:03 CV 524, 2003 WL 26132935, at *8 (N.D. Ohio Sept. 24, 2003) ("There is no private right of action for enforcement of the FTC Holder Rule.") (citing *Morales*).

To the extent Plaintiff bases his claims against Defendants on 16 C.F.R. § 444.2 ("Unfair credit practices."), "FTCA regulations do not create private rights." *Piche v. Clark Cnty. Collection Serv., LLC*, 119 F. App'x 104, 106 (9th Cir. 2004). *See also Cauley v. OakFirst Loan Ctr., LLC*, No. CIV.A RDB-09-772, 2010 WL 65003, at *2 (D. Md. Jan. 4, 2010); *Zhang v. Haven-Scott Assocs., Inc.*, No. CIV.A. 95-2126, 1996 WL 355344, at *12 (E.D. Pa. June 21, 1996); and, *Zhang v. Se. Fin. Grp., Inc.*, 980 F. Supp. 787, 796 (E.D. Pa. 1997).

Accordingly, Plaintiff's claims against Defendants based on 16 C.F.R. §§ 433.2 and 444.2 should be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6).

### d.      FCUA (12 U.S.C. §§ 1751-1795k)

To the extent Plaintiff bases his claims against Defendants on 12 U.S.C. §

1786(e)(l)(A) of the FCUA, "12 U.S.C. § 1786 does not create a private right of

action." *Heller v. CACL Fed. Credit Union*, 775 F. Supp. 839, 841 (E.D. Pa. 1991).

*See also Smith v. Dearborn Fed. Credit Union*, No. 91-4169, 1992 WL 425209, at

*3 (E.D. Mich. Mar. 5, 1992) (Cook, J.) ("several courts have held that no implied

private right of action exists under various sections of the FCUA.") (citations

omitted), *aff'd sub nom. Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976 (6th Cir.

1993); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1255 (9th Cir. 1997)

("Even if Bruns' claims do arise under § 1786(g), several courts have concluded that

no private right of action exists under that section.") (citations omitted).  Indeed,

Plaintiff responds that he "does not assert a private right of action under the

[FCUA]," but "references the Act to illustrate regulatory standards relevant to

Defendant's institutional misconduct."  (ECF No. 22, PageID.205.)

Accordingly, Plaintiff's claims against Defendants based on 12 U.S.C. §

1786(e)(l)(A) should be dismissed for "failure to state a claim upon which relief can

be granted[.]"  Fed. R. Civ. P. 12(b)(6).

### 3.      State law

To the extent Plaintiff's claims against Defendants are based on Article 9 of

*Michigan's* Uniform Commercial Code (UCC), *see* Mich. Comp. Laws §§

16

440.9101-440-9994 (*see* ECF No. 1, PageID.4, 5), or present a common law claim,

e.g., conversion (*see id.*, PageID.6, 7), the Court should decline to exercise

supplemental jurisdiction over such claims, consistent with 28 U.S.C. § 1367.

### G.    Conclusion

The Court should **GRANT** Defendants' motion to dismiss pursuant to Fed. R.

Civ. P. 12(b)(6) (ECF No. 16).

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to

file specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d

505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others

with specificity will not preserve all the objections a party might have to this Report

and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401

(6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273

(6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served

on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2,"

*etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  March 10, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

18